## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SRC ENTERTAINMENT, LLC d/b/a<br>NIGHTINGALE PLAZA<br>9247 Alden Drive<br>Beverly Hills, CA 90210,<br><br>              Plaintiff,<br>   v.<br><br>SMALL BUSINESS ADMINISTRATION,<br>409 3rd Street, SW<br>Washington, DC 20416,<br><br>ISABELLA CASILLAS GUZMAN,<br>Administrator, Small Business Administration,<br>409 3rd Street, SW<br>Washington, DC 20416,<br><br>             Defendants. | Civil Action No. _____ |

## COMPLAINT

Plaintiff SRC ENTERTAINMENT, LLC, d/b/a Nightingale Plaza ("Nightingale"), by and through counsel, alleges and states as follows:

### INTRODUCTION

1. This is an action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking emergency federal financial assistance unlawfully withheld by Defendants Small Business Administration ("SBA") and its Administrator, Isabella Casillas Guzman.

2. The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, as amended, 15 U.S.C. § 9009a, established the Shuttered Venue Operators Grant ("SVOG") Program to provide emergency financial assistance to eligible live entertainment businesses impacted by the global COVID-19 pandemic. The SVOG Program is administered by the SBA and

1

Administrator Casillas Guzman.

3. Plaintiff Nightingale demonstrated its eligibility for a SVOG award in its application to the SBA and, following an initial denial, its appeal to the SBA. The SBA denied Nightingale's application and its appeal. Nightingale was informed that its application was denied because it "did not meet the principal business activity standard for the entity type under which it applied" and that it "did not meet one or more of the eligibility criteria specific to the entity type under which it applied."

4. Nightingale is a live venue operator located on La Cienega Boulevard at the corner of Los Angeles and West Hollywood, California. Nightingale has been one of the premier performance venues in the area since it opened in 2003. It hosts live performances by world renowned musicians, DJ's and entertainers, and its clientele includes locals, celebrities, athletes, and international travelers. As a venue operator, Nightingale hosts live entertainment events on its property each day that it is open. Patrons cannot enter the Nightingale venue without paying an entry fee. The company markets and promotes its shows and employs approximately 60 employees on a full-time basis, including security personnel, food and cocktail servers, bartenders, and hosts. Nightingale has hosted some of the nation's most popular artists, including: 2 Chains, Lil Wayne, Roddy Ricch, Rich the Kid, and many more.

5. Nightingale meets each of the SVOG eligibility criteria specific to a venue operator. The SBA's denial of Nightingale's SVOG application was arbitrary, capricious, an abuse of discretion and otherwise unlawful.

6. The COVID-19 pandemic has had a devastating impact on Nightingale. Nightingale was completely shuttered for months and forced to furlough employees and staff members. Nightingale suffered an 82% decline of its revenue in 2020 as compared to 2019.

| 2019 Revenue | 2020 Revenue |
|---|---|
| $7,855,102 | $1,423,407 |

7. Nightingale further suffered a more than 99% decline in revenue in the first quarter of 2021 as compared to the first quarter of 2019.

| 2019 Revenue (Q1) | 2021 Revenue (Q1) |
|---|---|
| $2,277,880 | $14,818 |

8. Nightingale needs a SVOG award for precisely the reason Congress created the SVOG Program: to help eligible live entertainment businesses like Nightingale recover from the major setbacks they have experienced because of the pandemic.

9. SVOG funds are limited, and once the SBA has depleted the appropriated amount through awards, eligible businesses may not be able to receive the emergency assistance. Thus, even though Nightingale demonstrated that it is an eligible applicant, it may receive no assistance if SVOG funds are depleted before the SBA corrects the erroneous denial of Nightingale's application.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it presents federal questions under the APA.

11. Venue lies in this district under 28 U.S.C. § 1391(e)(1).

12. This Court has authority to issue declaratory and injunctive relief under 5 U.S.C.§ 706 and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

13. Plaintiff Nightingale is a Los Angeles, California based live entertainment venue that as its principal business activity, operates a live venue and produces, promotes, and books live performing artists at that venue.

## NIGHTINGALE







14. Defendant Small Business Administration is an independent agency of the federal government. The SBA's mission is to help Americans start, build and grow businesses.

15. Defendant Isabella Casillas Guzman is the Administrator of the SBA and oversees its operations. Administrator Casillas Guzman is sued in her official capacity.

## BACKGROUND

### A. Shuttered Venue Operators Grant Program

16. The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the "Act"), signed into law December 27, 2020, included $15 billion for grants to operators of shuttered venues. Pub. L. No. 116-260 § 324. The American Rescue Plan, enacted March 11, 2021, amended the Act by providing an additional $1,249,500,000 for SVOG awards. Pub. L. No.117-2 § 5005(a).

17. SVOG awards may be used for specified business expenses, including payroll, rent and utility payments, which are incurred between March 1, 2020, and December 31, 2021. 15 U.S.C. § 9009a(d)(1)(A)(i).

18. An eligible entity may receive a SVOG award in an amount equal to 45 percent of its gross earned revenue in 2019. 15 U.S.C. § 9009a(c).

19. Eligible businesses with 2021 first quarter revenues of no more than 30 percent of their 2019 first quarter revenues are eligible for supplemental grants in the amount of 50 percent of the original award amount, up to a maximum combined initial and supplemental SVOG award amount of $10 million. 15 U.S.C. § 9009a(b)(3)(A); SBA, *SBA Opens Supplemental Grant Applications for Shuttered Venue Operators Grant Awardees* (Aug. 27, 2021) https://www.sba.gov/article/2021/aug/27/sba-opens-supplemental-grant-applications-shuttered-venue-operators-grant-awardees. Supplemental awards can be used for costs incurred through June 30, 2022. 15 U.S.C. § 9009a(d)(1)(A)(i).

20. Eligible entities under the Act include live performing arts organization operators and live venue operators, as well as promoters, theatrical producers, museum operators, motion picture theatre operators, and talent representatives. 15 U.S.C. § 9009a(a)(1)(A).

21. In addition to falling within an eligible business category, to qualify for a SVOG award a business must meet general eligibility criteria including, *inter alia*, that the business was fully operational on February 29, 2020, suffered at least a 25 percent reduction of gross earned revenue during at least one quarter of 2020 as compared to 2019, and has reopened or intends to reopen. 15 U.S.C. § 9009a(a)(1)(A). The Act lists a number of characteristics that would render an entity ineligible, including, *inter alia*, issuance of securities on a national securities exchange, employing more than 500 employees, and presenting live performances of a prurient sexual nature. *Id.* § 9009a(a)(1)(A)(vi), 9009a(a)(1)(B).

22. The Act defines live venue operator or promotor, theatrical producer, or live performing arts organization operator identically. 15 U.S.C. § 9009a(a)(3)(A)(i). The definition

6

includes an entity that as a principal business activity organizes, promotes, produces manages or hosts live concerts, comedy shows, theatrical production or events by performing artists for which there is a ticketed cover charge, performers are paid in an amount set by sales or for agreement, and not less than 70 percent of revenue is generated through ticket sales or event beverages, food or merchandise. *Id.*

23.     The Act specifies that for a live venue operator (as well as a live venue promotor, performing arts organization operator, or theatrical producer) to be eligible, it must have additional characteristics.  It must put on events with defined performance and audience spaces; use mixing equipment, a public address system and a lighting rig; engage one or more individuals to carry out at least two of the following roles—sound engineer, booker, promoter, stage manager, security personnel, or box office manager; sell tickets or impose a cover charge for most performances; fairly pay artists; and market its events including through print or electronic publications, websites, mass email, or social media.  15 U.S.C. § 9009a(a)(1)(A)(iii).

**B.  Nightingale's SVOG Application and the SBA's Denial**

24.     On April 27, 2021, Nightingale applied for a SVOG award of $3,100,562.66. In its application, Nightingale demonstrated that it satisfied the criteria for eligibility as a live venue operator.  *See* 15 U.S.C. § 9009a(a)(3)(A) (defining the term "live venue operator or promotor, theatrical producer, or live performing arts organization operator").  Nightingale demonstrated that its quarterly losses in 2020 exceeded the 25 percent statutory threshold by submitting its financial statements for 2019 and 2020.  Nightingale also submitted, among other things: (i) documents demonstrating the performance space and defined audience space (floor plan), (ii) lighting rig (photos of lighting), (iii) mixing equipment (photos of sound mixing equipment), (iv) public address system (photos of PA system), (v) ticketing reports, (vi) advertising and marketing

documents, and (vii) contracts with its performers.  Nightingale further provided the certifications of eligibility required by the SBA's guidance on SVOG applications.

25. On August 12, 2021, Nightingale learned from the SBA's portal that its application was denied.  No detailed explanation was given for its denial.

26. On August 27, 2021, Nightingale submitted an administrative appeal of the denial to the SBA.

27. Nightingale explained in great detail and with supporting documentation how it meets each of the general eligibility requirements for a SVOG award and each of the specific eligibility requirements for live venue operators.  Nightingale's supporting documentation included: its quarterly income statements for 2019 and 2020; advertising documents; contracts with live performing artists; records reflecting cover charges and ticket sales; employee records and contractor agreements reflecting engagement of a sound engineer, stage manager, security personnel, box office manager, and bookers and promoters; photographs and floorplans demonstrating its defined performance space, audience space, sound mixing equipment, public address system, and lighting rig; payroll and other records reflecting its periods of operation; web links to marketing materials and websites; and other documentation.

28. On November 16, 2021, the SBA notified Nightingale that its appeal was denied. The portal's denial notice did not elaborate any further than that Nightingale "did not meet the principal business activity standard for the entity type under which it applied" and that it "did not meet one or more of the eligibility criteria specific to the entity type under which it applied."

29. The SBA's denial of Nightingale's appeal is the agency's final decision.

## CLAIMS FOR RELIEF

30. The courts recognize a strong presumption favoring judicial review of

administrative action.

31. The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

32. The APA provides that "final agency action for which there is no other adequate remedy in a court" is "subject to judicial review." 5 U.S.C. § 704.

33. The APA provides that courts will "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A) and (E), respectively.

34. The SBA is an "agency" whose final actions are reviewable under the APA.

### COUNT I - ARBITRARY AND CAPRICIOUS AGENCY ACTION

35. Nightingale realleges and incorporates by reference each of the preceding paragraphs and allegations.

36. A basic requirement of administrative law is that an agency provide the reasons for its decisions. However, the SBA gave no reason for denying Nightingale's application, nor did it provide any substantive reason when it denied Nightingale's appeal. The SBA's explanation was conclusory and did not provide enough detail for Nightingale to know the true reason for the SBA's denial.

37. Indeed, the SBA's decision on Nightingale's application conflicts with the evidence of Nightingale's eligibility that it presented to SBA in its application and in its appeal.

38. The SBA further erred by treating Nightingale disparately from similarly situated businesses that were granted SVOG awards. Specifically, the SBA approved the SVOG application of Nightingale competitors:

- Sound Nightclub
- Le Jardin
- Conga Room

39. The SBA's funding of the aforementioned entities has further exacerbated Nightingale's Covid related damages. These entities operate similar venues, have a business model nearly identical to Nightingale, are in close physical proximity to Nightingale, and compete for clientele. The fact that these close, direct competitors received timely funding from the SBA further harmed Nightingale's business within the highly competitive market of live performance venues in the Los Angeles area.

40. For each of these reasons, the SBA's denial of Nightingale's SVOG award request is arbitrary and capricious.

## COUNT II - AGENCY ACTION CONTRARY TO LAW

41. Nightingale realleges and incorporates by reference each of the preceding paragraphs and allegations.

42. Nightingale meets the Act's definition of a live performing arts organization operator and satisfies the Act's general eligibility criteria for a SVOG award.

43. The SBA's denial of Nightingale's SVOG award request therefore violated the Act and is contrary to law.

## COUNT III - AGENCY DECISION UNSUPPORTED BY SUBSTANTIAL EVIDENCE

44. Nightingale realleges and incorporates by reference each of the preceding paragraphs and allegations.

45. The SBA's denial of Nightingale's SVOG award request is supported by no evidence in the record, let alone substantial evidence. Nightingale's application and appeal

presented evidence that demonstrates Nightingale is eligible for a SVOG award.

46. The SBA's denial of Nightingale's SVOG award request is thus unsupported by substantial evidence.

## PRAYER FOR RELIEF

For the foregoing reasons, Nightingale respectfully requests that this Court:

47. Declare unlawful and set aside Defendants' denial of Nightingale's SVOG award request.

48. Preliminarily and permanently order Defendants to consider Nightingale's application for a SVOG award consistent with applicable law and the evidence before the SBA.

49. Preliminarily and permanently order Defendants to award Nightingale $3,100,562.66 in SVOG funds.

50. Preliminarily and permanently order Defendants to grant Nightingale a supplemental SVOG award of $1,550,281.33.

51. Preliminarily and permanently order Defendants to retain appropriations from the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Pub. L. No. 116-260 § 324) and/or the American Rescue Plan (Pub. L. No. 117-2 § 5005(b)) in an amount sufficient to fund Nightingale's SVOG initial and supplemental grant awards.

52. Award Plaintiff its costs and reasonable attorney fees; and

53. Grant such other and further relief as the Court deems just and proper.

Dated: June 1, 2022

Respectfully submitted,

/s/  Jeffrey E. McFadden
Jeffrey E. McFadden
D.C. Bar No. 434234
LAW OFFICES OF JEFFEREY E. MCFADDEN
312 Prospect Bay Drive E.
Grasonville, MD 21638-1181
410-490-1163
jmcfadden@jmcfaddenlaw.com

Tyler W. Hudson
D.C. Bar No. 485971
Eric D. Barton
(*pro hac vice* application to be filed)
WAGSTAFF & CARTMELL LLP
4740 Grand Ave., Suite 300
Kansas City, MO 64112
816-701-1100
thudson@wcllp.com
ebarton@wcllp.com

Matthew S. Mokwa
(*pro hac vice* application to be filed)
THE MAHER LAW FIRM, PA
271 West Canton Ave, Suite 1
Winter Park, FL 32789
407-839-0866
mmokwa@maherlawfirm.com

**Counsel for Plaintiff**