UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SRC ENTERTAINMENT, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>SMALL BUSINESS ADMINISTRATION, et al.<br><br>  Defendants. | Case No. 22-cv-01547 (APM) |

## MEMORANDUM OPINION

### I.

In this action, Plaintiff SRC Entertainment, LLC d/b/a Nightingale Plaza (SRC) challenges Defendant Small Business Administration's (SBA) denial of its application for a $3.1 million grant as a "live venue operator" under the COVID-19-era Shuttered Venue Operators Grant ("SVOG") program. The court is familiar with the program, *see Phil Waldrep Evangelistic Ass'n v. SBA*, No. 22-cv-00153, 2025 WL 958384 (APM) (D.D.C. Mar. 31, 2025), and presumes the parties' knowledge of the administrative record. The court therefore resolves this matter in an abbreviated fashion, without a lengthy recitation of the program's background, procedural history, or the administrative record. As explained below, the court grants Defendants' Cross-Motion for Summary Judgment, ECF No. 45, and denies Plaintiff's Motion for Summary Judgment, ECF No. 33 [hereinafter Pl.'s Mot.].

### II.

Before reaching the merits, the court must address the scope of the evidentiary record. Under the Administrative Procedure Act (APA), judicial review of agency action is generally limited to the administrative record. *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d

497, 514 (D.C. Cir. 2010). But Plaintiff has filed two motions asking the court to consider two new declarations from its Chief Business Officer, Jay Patel. *See* Pl.'s Mot. to Suppl. the Record with Extra-Record Evid., ECF No. 31 [hereinafter Pl.'s Mot. to Suppl.], Ex. 1, Decl. of Jay Patel, ECF No. 31-1 [hereinafter Patel Decl. I]; Pl.'s Mot. to Complete the Admin. Record, ECF No. 32 [hereinafter Pl.'s Mot. to Complete], Ex. 1, Second Decl. of Jay Patel, ECF No. 32-1. The first motion seeks to supplement the administrative record, *see* Pl.'s Mot. to Suppl., and the second asks to complete it, *see* Pl.'s Mot. to Complete. Both motions are denied. "The APA limits judicial review to the administrative record except when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review." *Salazar*, 616 F.3d at 514 (internal quotation marks and citation omitted). Plaintiff has made neither showing.

Reyling on *Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989), Plaintiff claims extra-record evidence is needed to demonstrate what it would have submitted on appeal had SBA supplied a reasoned explanation for its initial denial of the grant application. Pl.'s Mot. to Suppl. at 4. But "*Esch* has been given a limited interpretation since it was decided, and at most it may be invoked to challenge gross procedural deficiencies—such as where the administrative record itself is so deficient as to preclude effective review." *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013). The record here does not fall within that limited exception. The final agency action under review is SBA's denial of Plaintiff's grant application after an administrative appeal. Am. Compl., ECF No. 14, ¶¶ 44–47. The agency's denial letter is seven pages long, and it explains in detail why, based on the evidence before the agency, Plaintiff fell short in showing that it qualified as a "live venue operator" under the SVOG program. Admin. Record, ECF No. 51-1 [hereinafter AR], at 888–894. It therefore would not be appropriate to consider either

2

Patel Declaration in reviewing SBA's decision. Courts in this District have consistently excluded extra-record evidence in similar SVOG program cases.[1] This court does the same.

### III.

### A.

Turning then to the merits of whether SBA's decision was "arbitrary, capricious, . . . or otherwise not in accordance with law." 5 U.S.C. § 706. As relevant here, an applicant qualifies as a "live venue operator" under the SVOG grant program "if its principal business activity is hosting events by performing artist[s] and at least 70% of its earned revenue is generated from the hosting of eligible live artistic performances." AR889; 15 U.S.C. § 9009a(a)(3)(A)(i).[2] SBA denied Plaintiff's grant application because it "ha[d] not received sufficient documentation demonstrating that SRC earns 70% of its revenue from presenting qualifying live performances." AR890. Key to that decision was that nearly all the talent agreements that Plaintiff submitted as evidence involved some element of "hosting." AR891. SBA defined "hosting" as "[b]eing able to see, dance with, and hear from a celebrity 'host,'" and it did not consider hosting to be a qualifying live artistic performance. *Id.* SBA also evaluated marketing materials and financial records submitted by Plaintiff, as well as its venue's website. AR892–893. SBA found that "SRC can more reasonably be viewed as a bar or nightclub that plays music which, on certain occasions, may be performed by qualifying paid live performing artists." AR893. Plaintiff therefore did not show that it qualified as a live venue operator or promotor for purposes of the SVOG program.

---

[1] *See, e.g., Mae Cap. LLC v. SBA*, No. 22-cv-776 (TSC), 2025 WL 915534, at *4 (D.D.C. Mar. 26, 2025); *1306 Lounge, LLC v. SBA*, No. 22-cv-3320 (RBW), 2024 WL 4987025, at *6 (D.D.C. Dec. 5, 2024); *Monkey Jungle, Inc. v. SBA*, No. 22-cv-2537 (JDB), 2024 WL 3987016, at *6 (D.D.C. Aug. 29, 2024); *U.S. Olympic and Paralympic Museum v. SBA*, No. 22-cv-3785 (TSC), 2024 WL 3694462, at *2 (D.D.C. Aug. 7, 2024); *cf. Sokol World Ent., Inc. v. SBA*, No. 21-cv-2385 (TSC), 2022 WL 4547540, at *5 (D.D.C. Sept. 28, 2022) (permitting extra-record evidence where "the agency in charge of adjudicating appeals specifically instruct[ed] appellants not to include such information in their applications").

[2] Plaintiff does not contend that the alternative definition of "live venue operator" based on the timing of ticket sales is applicable. *See* 15 U.S.C. § 9009a(a)(3)(A)(ii).

Plaintiff substantively challenges this decision on multiple fronts. Primarily, it contests the distinction that SBA drew between "hosting" and a live artistic performance, asserting that the premise is an "utterly flawed, subjective, and insupportable conclusion . . . from which the remainder of SBA's arbitrary and capricious logic flows." Pl.'s Mot., Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot., ECF No. 31-1 [hereinafter Pl.'s Mem.], at 8. Plaintiff first points to the Patel Declaration, *see id.* at 9, which represents that Plaintiff's talent agreements use the term "'host' synonymously with 'headliner,'" and that a "host" "performs before [a] live audience and is compensated for that performance," Patel Decl. I ¶ 18. For the reasons already explained, the court does not consider that extra-record submission.

Next, Plaintiff maintains that SBA's definition of "host" is "unsupported by the Administrative Record and the product of pure speculation." Pl.'s Mem. at 9. As proof that "hosts" in fact "perform[]" live events, Plaintiff points to a single clause in its talent agreements. *See id.* That clause states: "Purchaser may include costumed performers, aerial dancers and/or characters (collectively, the 'Purchaser's Performers') in and around the DJ booth and/or stage during Talent's performance, including, but not limited to, fire performers, go-go dancers and gymnasts." *See, e.g.,* AR487, ¶ 4. But neither that provision nor the record as a whole establishes that SBA acted arbitrarily and capriciously.

The distinction drawn by the agency between "hosting" and "performing" is substantiated from the seven agreements that Plaintiff submitted for review. Each contract—titled a "Talent Engagement Agreement"—specifies the "Type of Engagement" that the "Talent" will supply, and uses different words to describe what the Talent will be paid to do. The "Type[s] of Engagement" include: (1) "Hosting and live performance," AR 459 (Rich the Kid); (2) "Host/DJ Set," AR466 (DJ Drama); (3) "DJ Performance," AR473 (Paris Hilton); (4) "Hosting," AR480 (Roddy Ricch);

4

(5) "Hosting," AR486 (2 Chainz); (6) "Hosting," AR492 (2 Chainz); and (7) "Hosting and Performance," AR 498 (Tory Lanez). Thus, within and across its own agreements, Plaintiff itself distinguished between paying artists to host and to perform. That distinction is consistent with how those terms are commonly understood.[3]

The sole contract clause on which Plaintiff relies does not compel a different result. That provision speaks to Plaintiff's right as the venue operator to place others in and around the artist at the venue. True, the clause uses the word "performance," but that passing reference does not displace "Type of Engagement" as the primary description of what service or act the "Talent" will provide. And, as noted, the contracts submitted by Plaintiff draw a distinction between hosting and performing. It was not arbitrary and capricious for SBA to do the same.

Last, Plaintiff argues that SBA overlooked that 90% of its "gross revenue ($7 million out of $7.8 million) is generated from eligible live performances as defined by the SVOG statute and relevant regulations." Pl.'s Mem. at 10. It points that out that most of its revenues (over $4.8 million) come from "advance reservations," or "cover charges" that include food and drink minimums. *Id.* at 10–11 (citing *Applications for New Awards; Shuttered Venue Operators Grants (SVOG)*, 86 Fed. Reg. 16270, 16272 (Mar. 26, 2021) (defining "[c]over [c]harges" to mean "charges to encompass front door entrance fees, food or beverage minimums, or other similar charges required to gain admission to a venue")). But Plaintiff's argument fails because it presumes the answer: that its cover-charge revenues are attributable to live performances. By statute, the minimum showing of 70% of earned revenues to qualify as a live venue operator includes receipts generated from cover charges and food and beverage sales "to the extent related

---

[3] *Host*, Merriam-Webster's Dictionary ("a person who receives or entertains guests socially, commercially, or officially"), https://www.merriam-webster.com/dictionary/hosting (last visited Feb. 9, 2026); *Performance*, Merriam-Webster's Dictionary ("the execution of an action"; "the public presentation or exhibition"), https://www.merriam-webster.com/dictionary/performance (last visited Feb. 9, 2026).

5

to a live event." 15 U.S.C. § 9009a(a)(3)(A)(i)(II).  As discussed, however, Plaintiff failed to demonstrate that its events predominantly qualified as live artistic performances.  Of the seven talent agreements Plaintiff submitted, three were for "hosting" only, three were for "hosting" and "performance," and one was for a DJ performance.  *See* pgs. 4–5 *supra*.  Even if all four contracts that call for some performance are treated as a qualifying live event, that still leaves Plaintiff below the 70% mark (4/7 = 57%).[4]  It therefore was not arbitrary and capricious for SBA to find that Plaintiff did not qualify for an SVOG grant.  AR891 (finding that "only a limited number of the contracted performers are engaged in qualifying performances and only revenue generated from qualifying events counts towards the 70% requirement").[5]

## B.

Plaintiff also challenges the process by which SBA denied the award.  It complains that "SBA failed to notify [SRC] of the reason for denying its SVOG application, and thereby deprived [SRC] of a meaningful opportunity to demonstrate on administrative appeal that the denial was erroneous."  Pl.'s Mem. at 13; AR915 (initial denial of application, advising Plaintiff: "Based on the information provided, your organization does not meet the definition of an eligible entity under the statute.").  "In short," it argues, "[SRC] was forced to file its administrative appeal without knowing the reason for which its application was denied in the first instance."  Pl.'s Mem. at 13.

The court might sympathize with this contention except that Plaintiff disqualified itself from the SVOG program by making an elementary error on its initial application.  Asked whether

---

[4] Plaintiff did not attempt to show that it earned more revenues from performances, such that the earned revenue for those events collectively exceeded the 70% mark.

[5] The marketing materials submitted by Plaintiff do not compel a different result.  *See* Pl.'s Mem. at 11–12 (citing AR442–458).  Some clearly refer to a performance.  *See, e.g.*, AR443 (Bendelacreme), 456 (Rook).  Others allude to DJ sets.  *See, e.g.*, AR 448 (Valentine's Day event), 449 (Mardi Gras event), 456 (Ruckus).  But nearly one third expressly refer to "hosting."  *See, e.g.*, AR447 (Future), 448 (Rich the Kid), 454 (Yo Gotti), 458 (Roddy Ricch).  And several more do not specify what the talent will do.  *See, e.g.*, AR444 (2 Chainz), 445 (Cacti), 446 (2 Chainz), 452 (2 Chainz and Lil Wayne).  The marketing materials therefore do not establish that 70% of earned revenues are attributable to qualifying live performances.

"performers [are] paid by a percentage of sales, guarantee or other mutually beneficial formal agreement," Plaintiff answered "[n]o." AR217 (Eligibility Question 22). That response rendered Plaintiff ineligible from the jump, as a clear statutory precondition to receiving an SVOG grant was paying performers. *See* 15 U.S.C. 9009a(3)(A)(i)(I)(bb). Plaintiff cannot now be heard to complain that SBA failed to specify the reason for the initial application denial, when its own fatal error caused its disqualification from program eligibility. *See* 5 U.S.C. § 555(e) (providing that an agency need not provide a "brief statement of the grounds for denial" "when the denial is self-explanatory").

Nor has Plaintiff shown prejudice. *See* 5 U.S.C. § 706 (requiring that "due account shall be taken of the rule of prejudicial error"). It argues that "[t]he proffered Patel Declaration contains competent evidence [SRC] would have included in its administrative appeal" had the agency explained the reason for the initial denial. Pl.'s Mem. at 13. But the Patel Declaration's clear aim is not to show what the agency would have adduced had SBA been more specific when it first denied the application; rather, it is to rebut the agency's later detailed rationale for denying the appeal. *See generally* Patel Decl. I. Plaintiff therefore has not shown SBA's terse initial rejection caused prejudice.

Plaintiff's reliance on *United States Olympic & Paralympic Museum* is misplaced. Pl.'s Mem. at 14 (citing No. 22-cv-3785 (TSC), 2024 WL 3694462 (D.D.C. Aug. 7, 2024)). In that case, the court found prejudicial error where the plaintiff established that, had SBA supplied a reasoned explanation for the initial SVOG grant denial, it likely would have prevailed on appeal. 2024 WL 3694462, at *5. Plaintiff here made no similar showing.[6]

---

[6] Plaintiff also attacks SBA's decision because the process "was adversarial, not remedial." Pl.'s Mem. at 16. This assertion is more commentary than claim. Plaintiff cites no case that would support a finding that the mere characterization of an agency's decision-making in such manner would violate the APA. The sole case that Plaintiff cites is from the Court of International Trade—*Former Employees of BMC Software, Inc. v. U.S. Secretary of Labor*,

7

C.

Finally, Plaintiff contends that the denial of its application was arbitrary and capricious because SBA granted SVOG applications to "three companies with venues similar to [SRC], but not to [SRC]." Pl.'s Mem. at 15. "The great principle that like cases must receive like treatment is . . . black letter administrative law." *Balt. Gas & Elec. Co. v. FERC*, 954 F.3d 279, 286 (D.C. Cir. 2020) (cleaned up). But Plaintiff points to nothing in the administrative record to substantiate its claim of disparate treatment. Nor does it offer any response to SBA's explanation for why the three identified comparators are not similarly situated. *See* AR893. Even the extra-record Patel Declaration offers no evidence to support Plaintiff's contention that these venues are comparable yet received SVOG awards. *See* Patel Decl. I ¶ 19. Plaintiff's claim therefore fails.[7]

IV.

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, ECF No. 33, is denied, and Defendants' Cross-Motion for Summary Judgment, ECF No. 45, is granted. The court also denies Plaintiff's motions seeking consideration of extra-record evidence, ECF Nos. 31, 32. Finally, the Consent Motion to File Under Seal, ECF No. 51, is granted. The unredacted Joint Appendix, ECF No. 51-1, shall remain under seal.

A final, appealable order accompanies this Memorandum Opinion.

Dated: February 9, 2026

Amit P. Mehta
United States District Judge

---

454 F. Supp. 2d 1306 (C.I.T. 2006)—and is wholly inapposite, and the portions quoted by Plaintiff are clear dicta. Pl.'s Mem. at 17–18 (quoting a paragraph from the Conclusion section of the opinion, 454 F. Supp. 2d at 1357).

[7] For the first time in reply, Plaintiff contends that, in rendering its decision, "the SBA failed to follow its own internal rules and guidelines and departed from established precedent without any discussion or explanation." Pl.'s Reply in Supp. of Pl.'s Mot. and in Opp'n to SBA's Cross-Mot. for Summ. J., ECF No. 48, at 6. But it is a "basic precept that arguments generally are forfeited if raised for the first time in reply," so the court declines to address this contention. *Twin Rivers Paper Co. v. SEC*, 934 F.3d 607, 615 (D.C. Cir. 2019).